UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THOMAS H. DICK,

    Plaintiff,

-vs-                 Case No. 5:07-cv-452-Oc-10GRJ

CITRUS COUNTY, FLORIDA, a political
subdivision of the State of Florida, JUNE M.
FISHER, in her official capacity as County
Administrator for Citrus County and in her
individual capacity, ROBERT B. BATTISTA,
in his official capacity as County Attorney
for Citrus County and in his individual
capacity, JOYCE VALENTINO, in her
individual capacity, SAL VALENTINO,

    Defendants.
_____

## **O R D E R**

   The Plaintiff, a former employee of Defendant Citrus County, Florida, alleges that his First and Fourteenth Amendment rights were violated when his employment was terminated in June 2007. The case is presently before the Court for consideration of Citrus County's Motion to Dismiss Count One of Plaintiff's Amended Complaint With Prejudice (Doc. 29), and Defendant Sal Valentino's Motion to Dismiss Amended Complaint (Doc. 21). The Plaintiff has filed responses in opposition to both motions, (Docs. 28, 32), and they are ripe for disposition. As discussed more fully below, the Court concludes that both motions are due to be denied.

**Factual Background**

I.   Introduction.

The following facts are alleged in the Amended Complaint. The Plaintiff, Thomas H. Dick, is a resident of Citrus County, Florida. From December 1981 through June 4, 2007, the Plaintiff was an employee of Defendant, Citrus County. Defendant Sal Valentino is a private citizen and resident of Citrus County, and the husband of County Commissioner Joyce Valentino.

II.   The Plaintiff's Employment.

The Plaintiff held numerous positions while working for Citrus County, culminating in his promotion to Assistant County Administrator on or about August 15, 2005. Until the time of his termination, the Plaintiff had been considered an exemplary employee - he had never been disciplined, and continuously received satisfactory performance evaluations and corresponding pay raises.

The position of Assistant County Administrator reports directly to the County Administrator, and at the time of the Plaintiff's promotion, the County Administrator was Richard Wesch. It was common knowledge throughout Citrus County's administration that the Plaintiff and Wesch were long-time personal friends. On March 28, 2006, the Citrus County Board of County Commissioners, ("the Board"), by a vote of 3-2, terminated Wesch's employment. Two of the Commissioners who supported Wesch's termination were Vicki Phillips and Joyce Valentino.

Immediately following Wesch's termination, the Board attempted to appoint the Plaintiff as Acting County Administrator. The Plaintiff respectfully declined, publicly stating that while he would perform the necessary functions of the position, he did not wish to gain money or title from the Board's firing of Wesch. During the Plaintiff's subsequent annual evaluation, Commissioner Phillips expressed her displeasure to the Plaintiff about his public comments concerning Wesch's firing. Phillips also continuously expressed her dislike for Wesch through numerous statements to the press.

Following his termination, Wesch was hired as a legal advisor to the Sheriff of Citrus County, Jeff Dawsy. The Plaintiff was a known friend and supporter of Sheriff Dawsy - he voted for Sheriff Dawsy and was a member of the same political party. The Plaintiff also continued to associate and work with both Wesch and Sheriff Dawsy. Commissioners Phillips and Joyce Valentino, who were members of the opposing political party, were upset with Sheriff Dawsy's hiring of Wesch, as well as the Plaintiff's continued association with both Wesch and Sheriff Dawsy. Citrus County Attorney Robert Battista was also upset by the Plaintiff's actions and associations, and publicly expressed his dislike of both Wesch and any persons who associated with him on several occasions.

The Plaintiff successfully performed the job duties of the Acting County Administrator position without incident for several months. During this time period, the Plaintiff expressed his support for Sheriff Dawsy, making several positive comments about Dawsy's job performance to Commissioners Phillips and Joyce Valentino. For example, during Commissioner briefings, the Plaintiff recommended that Sheriff Dawsy continue to maintain

responsibility for the County's Emergency Management/Disaster Preparedness systems.[1] This caused resentment on the part of Commissioners Phillips and Joyce Valentino, who lobbied heavily to have these responsibilities taken away from Sheriff Dawsy. The Plaintiff's comments also contributed to the perception that the Plaintiff had an allegiance to Sheriff Dawsy, instead of to Citrus County. County Attorney Battista, an ally of Commissioners Phillips and Joyce Valentino, also considered the Plaintiff's support of Sheriff Dawsy on the Emergency Management/Disaster Preparedness issue to be a demonstration of disloyalty to Citrus County.

On another occasion, Commissioners Phillips and Joyce Valentino expressed their displeasure to the Plaintiff for not obtaining a sufficient level of detail from Sheriff Dawsy concerning his proposed budget for the 2006-2007 fiscal year. The Commissioners interpreted the Plaintiff's inability to secure a detailed budget as an allegiance to Sheriff Dawsy rather than to Citrus County.

III.     The New County Administrator.

On October 2, 2006, Citrus County hired June B. Fisher as the new County Administrator. The Plaintiff alleges that Fisher quickly aligned herself with both Battista and Commissioners Phillips and Joyce Valentino, and became suspicious of the Plaintiff's continued relationship with Sheriff Dawsy and Wesch. Almost immediately after her hiring, Fisher systematically stripped the Plaintiff of many of his former functions and job duties,

---

[1] It is not clear whether the Commissioner briefings were open to the public.

and reduced the Plaintiff's position to simply that of an assistant to Fisher, with very few substantive duties, and little to no interaction with other Citrus County divisions and departments.

On April 9, 2007, the Plaintiff sent an email to Fisher and all of the County Commissioners, thanking them for their understanding regarding a recent Family and Medical Leave absence. On April 10, 2007, Fisher met with the Plaintiff and told him that his email was inappropriate. Fisher further explained to the Plaintiff that "I am the only one who works for the Commissioners, and you work for me." Fisher then directed that all correspondence to and from County divisions and departments go solely to her - thereby cutting the Plaintiff out of the information loop.

That same day, the Board voted by a 3-2 margin to proceed forward with construction of a new multi-million dollar Emergency Operations Center ("EOC") building, which included construction of a new command center for Sheriff Dawsy. Commissioners Phillips and Joyce Valentino were strongly opposed to the new building, and had publicly voiced their opposition to it. At the conclusion of the vote, Battista observed the Plaintiff embracing Sheriff Dawsy in a gesture of congratulations for prevailing in the vote. Battista expressed his displeasure with the Plaintiff's actions to several members of his senior staff.

IV.	The April 30, 2007 Phone Calls.

On April 26, 2007, Fisher was forced to take a leave of absence for a potentially serious family health concern. During Fisher's absence, and in accordance with Citrus County's Administrative Regulations, the Plaintiff was named Acting County Administrator.

Prior to taking leave, Fisher orally told the Plaintiff that she wanted to take the issue of submitting a Request for Proposal ("RFP") for the financing of the EOC construction project to the entire Board during the next scheduled Board meeting on May 8, 2007.

On April 30, 2007, the Plaintiff attended a "Kickoff Meeting" for the EOC construction project. Sheriff Dawsy and Wesch were also in attendance. During the meeting, the construction company who was awarded the contract for the EOC building informed the Plaintiff that their bid for the project was now 60 days old and in danger of becoming invalid due to rising construction costs. The construction company advised the Plaintiff that unless financing was secured as soon as possible, Citrus County ran the risk of incurring hundreds of thousands of dollars in additional construction costs.

Around this same time, the Plaintiff learned that if he adhered to Fisher's wishes and waited until the May 8, 2007 Board meeting, that financing for the EOC construction project would most likely not be completed until sometime in June, which would have jeopardized the validity of the current construction bid. Based on this information, as well as the Plaintiff's knowledge that pursuant to Citrus County's Administrative Regulations, Board approval was not necessary in order to issue an RFP, the Plaintiff decided he would issue the RFP himself.

Prior to so doing, and out of an abundance of caution, the Plaintiff confirmed with the Director of Citrus County's Office of Management and Budget that there was no prohibition against issuing the RFP without prior Board approval. Accordingly, on April 30, 2007, following the Kickoff Meeting, the Plaintiff, in the presence of both Sheriff Dawsy and

Wesch, attempted to reach each of the Commissioners to apprise them of the circumstances surrounding the RFP and the Plaintiff's intent to issue the RFP immediately. The Plaintiff spoke via telephone with Commissioners Damato, Bartell and Phillips, and left voice mail messages for Commissioners Thrumston and Joyce Valentino. At no time did the Plaintiff request that the Commissioners take a vote on the matter. None of the Commissioners expressed any opposition to the Plaintiff's plan, but merely cautioned to make sure that all applicable procedures and policies be followed.[2] Later that night, the Plaintiff sent Fisher two emails (her requested method of communication while on leave), informing her of the events of the day, and of his intent to issue the RFP. Fisher never contacted the Plaintiff while she was out on leave.

V.    The Plaintiff's Termination.

Fisher returned to work on May 2, 2007, but did not voice any opposition to the issued RFP, or take any action to revoke it. Instead, at some point between May 2, 2007 and May 14, 2007, Fisher discussed with Battista her suspicions that the Plaintiff's phone calls to the Commissioners may have violated Florida's "Sunshine Law," Fla. Stat. §286.011.[3] Battista and his staff began an investigation into the Plaintiff's conduct.

---

[2] Commissioner Phillips also requested that the RFP issue remain on the agenda for the May 8, 2007 Board meeting.

[3] Florida's Sunshine Law provides, in relevant part, that all meetings of boards, commissions, and other state and local governing bodies, agencies and authorities are open to the public.

On May 12, 2007, a witness working on the campaign of State Representative Charlie Dean overheard Defendant Sal Valentino, husband of Commissioner Joyce Valentino, tell other persons that the Plaintiff's employment was going to be terminated on May 14, 2007 for alleged violations of the Sunshine Law and for being at work under the influence of alcohol. On May 14, 2007, the Plaintiff was in fact summoned to a meeting with Fisher and the Chief Assistant County Attorney. During the meeting, Fisher informed the Plaintiff that: (1) he had violated Citrus County Administrative Regulation 8.04.01-5 concerning "Contracting for Professional Services;" (2) he had violated the Sunshine Law; (3) he was at work under the influence of alcohol; and (4) he was insubordinate. Fisher also told the Plaintiff that she had already informed all of the Commissioners during a May 9, 2007 meeting that the Plaintiff had been under the influence of alcohol at work. This was the first time that Fisher had ever raised the issue of alcohol use, and had never previously requested the Plaintiff submit to any testing.

At the conclusion of the meeting, the Plaintiff was given two days to decide whether to resign or face termination. On May 15, 2007, the Plaintiff met again with Fisher and asked that she specifically identify the violations of the Citrus County Employee Handbook or Personnel Manual upon which she was basing her termination decision. Fisher refused to do so and refused to provide any further details concerning the reasons for termination.

The Plaintiff ultimately refused to resign, and on May 17, 2007, Fisher issued a letter entitled "Notice of Disciplinary Action" stating Fisher's intent to terminate the Plaintiff's employment. (Doc. 20-5, Ex. D). The letter enumerated four bases for termination: (1)

failure to follow the chain of command by directly communicating with the Commissioners after Fisher told the Plaintiff that all such communications must go solely through her; (2) behavior that placed the Board at risk of violating the Sunshine Law; (3) deliberate refusal to comply with Fisher's directions, including directly contacting the Commissioners on April 30, 2007; and (4) contacting the Commissioners on April 30, 2007 in willful violation of the Sunshine Law and the County's Debt Management Policy. The letter further stated that the Plaintiff's actions constituted conducted unbecoming a public employee, failure to perform job duties, insubordination, and willful violation of statutory authority, rules, regulations or policies. The letter did not mention any specific regulations, and did not mention the Plaintiff's alleged alcohol use.

Pursuant to Citrus County policies, the Plaintiff was afforded a pre-determination hearing to challenge the proposed termination. The hearing was held on May 25, 2007, before Fisher herself. Fisher refused to appoint someone else to conduct the hearing despite her obvious lack of impartiality. At the conclusion of the hearing, Fisher upheld her decision to terminate the Plaintiff's employment.

On May 20, 2007, five days before the pre-determination hearing, the local newspaper The Citrus County Chronicle ran a story concerning the allegations that the Plaintiff may have violated the Sunshine Law. (Doc. 20-4, Ex. C). Commissioner Joyce Valentino was quoted in the story, stating that she believed the Plaintiff, Sheriff Dawsy, and Wesch, all violated the law, and that Sheriff Dawsy had encouraged the Plaintiff to make the calls to the Commissioners on April 30, 2007. Immediately after the article was

published, Sheriff Dawsy contacted the State Attorney for the Fifth Judicial Circuit of Florida and requested that he investigate the allegations by Commissioner Joyce Valentino. On May 22, 2007, three days before the pre-determination hearing, the State Attorney's office issued a decision and investigative report clearing the Plaintiff, Sheriff Dawsy, and Wesch, as well as the Commissioners, from any violation of the Sunshine Law. This decision and report was provided to Fisher at the pre-determination hearing.

Following the May 25, 2007 pre-determination hearing, Fisher issued a termination letter, stating that the Plaintiff's employment was terminated as of June 4, 2007. The Plaintiff subsequently requested a post-determination hearing seeking reconsideration of Fisher's decision. Fisher assigned her ally, County Attorney Battista, to preside over the hearing, which was conducted on July 16, 2007 and August 9, 2007. Battista ultimately upheld Fisher's termination decision, even though there was evidence that the Plaintiff never violated the Sunshine Law, and despite the fact that the Plaintiff had never previously been disciplined during his more than 25 years of employment.

VI.     Procedural Background.

The Plaintiff alleges that the stated reasons for his termination were mere pretext for Fisher's and the Board's retaliation against the Plaintiff for his continued association with and support of both Sheriff Dawsy and Wesch, and past political patronage of Sheriff Dawsy. The Plaintiff initially filed suit alleging violations of his First and Fourteenth Amendment rights against Citrus County, Fisher, Joyce Valentino, Battista, and Sal Valentino (Doc. 1). The Plaintiff subsequently amended his complaint to remove all claims

against Fisher, Joyce Valentino, and Battista, and filed a notice of voluntary dismissal with respect to these Defendants (Doc. 18). Judgment was entered dismissing all claims with prejudice against Fisher, Joyce Valentino, and Battista on January 25, 2008 (Doc. 25).

The Plaintiff's Amended Complaint, which is now the operative document in this case, consists of two claims: (1) a claim under 42 U.S.C. § 1983 against Citrus County, alleging that the Plaintiff's employment was terminated in retaliation for exercising his First Amendment right to freedom of association; and (2) a state law claim of defamation against Sal Valentino. The remaining Defendants seek dismissal of both claims.

## **Standard of Review**

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955 (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

I.   The First Amendment Claim

Citrus County seeks dismissal of the Plaintiff's First Amendment freedom of association claim on the grounds that he has failed to sufficiently allege a violation of his constitutional rights. According to Supreme Court precedent, "the United States Constitution accords special protection to two different forms of association, 'intimate association' and 'expressive association.'" McCabe v. Sharrett, 12 F.3d 1558, 1562-63 (11th Cir. 1994) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)). The right of intimate association "encompasses the personal relationships that attend the creation and sustenance of a family - marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." McCabe, 12 F.3d at 1563 (citing Roberts, 468 U.S. at 619). The right of expressive association encompasses "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such

as speech, assembly, petition for the redress of grievances, and the exercise of religion." McCabe, 12 F.3d at 1563. It "protects political association as well as political expression." Buckley v. Valeo, 424 U.S. 1, 13 (1976). Citrus County contends that the Plaintiff has not properly alleged that he has engaged in either type of associative conduct.

In his response, the Plaintiff makes clear that he is not asserting a claim based on a theory of intimate association. Rather, he has limited his First Amendment claim to an assertion "that his constitutional right to freedom of association was infringed upon in regard to his right to expressive association by virtue of his political patronage of Sheriff Dawsy and Wesch." See Doc. 32, p. 4 (emphasis in original). Thus, as confirmed by the Plaintiff, this is a political patronage retaliation claim.

To establish a *prima facie* claim for political patronage, the Plaintiff must allege that: (1) he worked for a public agency in a position that does not require a political affiliation; (2) he engaged in constitutionally protected conduct; (3) he suffered an adverse employment action for exercising the right; and (4) that conduct was a substantial or motivating factor in the government's employment decision. See McCabe, 12 F.3d at 1562; Calvert v. Hicks, 510 F. Supp.2d 1164, 1169 (N.D. Ga. 2007). See also Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997). Citrus County focuses its attack solely on the second prong of the Plaintiff's *prima facie* case - whether the Plaintiff has sufficiently alleged that he engaged in protected conduct.

Taking all the facts as alleged in the Amended Complaint as true, which the Court must at the motion to dismiss stage, the Court finds that the Plaintiff has met its burden and

established his *prima facie* case. The types of protected conduct covered under a political patronage claim typically involve voting for or supporting a candidate or political party that opposed the employee's supervisor. See Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976). This is precisely what the Plaintiff has alleged. The Amended Complaint sets forth that the Plaintiff has alleged that he voted for Sheriff Dawsy, that he expressed both publicly and privately his support for both Dawsy and Wesch, (including in at least two situations where Commissioners Phillips and Joyce Valentino were directly opposed to Sheriff Dawsy's positions), that Dawsy and Wesch are members of the opposing political party from Commissioners Phillips and Joyce Valentino, and that these Commissioners, as well as Fisher and Battista, all perceived the Plaintiff to be in allegiance with Dawsy and Wesch. The Plaintiff has further alleged that his continued support and association with both Dawsy and Wesch was well known throughout Citrus County's administration, and that he was terminated solely in response to his allegiance to them, thereby satisfying the remaining prongs of his *prima facie* case. See Doc. 20, ¶¶ 16-20, 23-27, 29, 38-41, 96-99.

The Court recognizes that this is a close case, and Citrus County has raised several potentially valid challenges to the Plaintiff's allegations of protected conduct. However, the majority of these issues can only be resolved after a full analysis of the facts, and can best be addressed either at summary judgment or trial. Applying the lenient notice pleading standards mandated by the Supreme Court and this Circuit, the Court finds that the allegations set forth in the Amended Complaint can be reasonably interpreted to establish

that the Plaintiff engaged in a form of expressive association protected by the First Amendment. Citrus County's motion to dismiss will therefore be denied. See Morris v. Crow, 117 F.3d 449, 456 (11th Cir. 1997) (the Eleventh Circuit "has not limited political patronage cases strictly to those cases involving party affiliation, but has recognized that the Elrod/Branti analysis applies whenever public employment is 'conditioned upon political allegiance and not upon the content of expression of political beliefs.'" (quoting Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989)).[4]

II. The Defamation Claim

Defendant Sal Valentino seeks dismissal of the defamation claim against him on two grounds. First, he contends that the Plaintiff's Amended Complaint should be dismissed because the Plaintiff did not obtain leave of Court, or permission from opposing counsel, before amending his complaint. This argument fails because, as the Plaintiff correctly points out, he amended his complaint before he was served with a responsive pleading. See Fed. R. Civ. P. 15(a)(1)(A). At the time the Amended Complaint was filed, the Defendants had only filed motions to dismiss, which are not considered "pleadings" for purposes of Rule 15(a). See Fortner v. Thomas, 983 F.2d 1024, 1032 (11th Cir. 1993); Chilivis v. Securities & Exchange Comm'n, 673 F.2d 1205, 1209 (11th Cir. 1982).

---

[4]Further supporting the Court's decision is the fact that all but one of the decisions cited by Citrus County involved claims that were disposed of either at trial or at the summary judgment stage, following completion of discovery.

Defendant Sal Valentino next argues that the defamation claim should be dismissed based on a lack of subject matter jurisdiction. More specifically, he contends that there is no federal question or diversity jurisdiction, and that the facts involving the defamation claim do not arise out of the same case or controversy such that supplemental jurisdiction exists under 28 U.S.C. § 1367(a). In response, the Plaintiff agrees both that the defamation claim is separate from his § 1983 claim, and that the Court does not have original subject matter jurisdiction over the state law claim, but urges the Court to exercise its discretion and retain the claim based on considerations of judicial economy, convenience, and fairness to litigants. See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).

A district court may exercise jurisdiction over all state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This constitutional "case or controversy" standard confers supplemental jurisdiction over all state claims which "derive from a common nucleus of operative fact" as a substantial federal claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724-25 (1966); Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1563-64 (11th Cir. 1994). The determination of whether supplemental jurisdiction exists is ordinarily determined from the pleadings themselves. See Gibbs, 383 U.S. at 728-29; Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir. 1997).

A review of the Amended Complaint in this case demonstrates that the Plaintiff's defamation claim and § 1983 claim do not arise out of a common nucleus of operative facts. The defamation claim involves a statement allegedly made by Valentino to several unidentified persons, ostensibly at the campaign offices of State Representative Charlie Dean. There are no allegations that any of the persons who overheard Valentino's alleged statements were involved in any way with the Plaintiff's termination specifically, or with his employment with Citrus County in general. Moreover, the substance of the statement - that the Plaintiff showed up at work under the influence of alcohol - does not appear to have been one of the ultimate reasons for his termination.

The Plaintiff emphasizes that Valentino's alleged statement was repeated by Fisher on at least one occasion prior to the Plaintiff's termination. However, this fact alone is not sufficient to satisfy the requirements for supplemental jurisdiction. With the possible exception of Fisher, it does not appear that there would be any overlap among witnesses or evidence presented to establish the defamation claim and the § 1983 First Amendment claim. In other words, the § 1983 claim can be proven without submitting any evidence of the alleged defamation, and, conversely, proof of the alleged defamation can be established without any evidence relating to the First Amendment claim.

Given the lack of a common nucleus of operative facts, the Court concludes that the defamation claim does not form part of the same case or controversy as the § 1983 claim, and therefore supplemental jurisdiction over the defamation claim does not exist. Valentino's motion to dismiss shall be granted.

**Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)  Defendant Citrus County, Florida's Motion to Dismiss Count One of Plaintiff's Amended Complaint (Doc. 29) is DENIED.

(2)  Defendant Sal Valentino's Motion to Dismiss Amended Complaint (Doc. 21) is GRANTED, and Count II of the Plaintiff's Amended Complaint (Doc. 20) is DISMISSED WITHOUT PREJUDICE.

(3)  The Clerk is directed to TERMINATE AS MOOT the Defendants' previously filed motions to dismiss, (Docs. 14, 15, and 19), which relate to the Plaintiff's original complaint.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 18th day of February, 2009.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record